GEORGE M. POWELL et al. *v.* ELIZABETH BURRUS, Admr'x, &c.

1. EXECUTOR AND ADMINISTRATOR: HIGH COURT: WHEN THE COURT WILL REVISE A DECISION OF THE COURT OF PROBATE ALLOWING COMMISSIONS.—This court will not interfere with the exercise of the discretion vested by law in the Probate Court, in the allowance of commissions to an administrator, except in case of its manifest and flagrant abuse.

2. SAME: CASES IN WHICH COMMISSIONS ARE ALLOWED.—The provision made by law for the allowance of commissions to administrators, executors, &c., is not alone for the purpose of furnishing compensation for the trouble and labor expended in administering the estate, but also to reward them for the responsibility incurred, and for their fidelity in the discharge of the trust imposed on them.

3. COURT OF PROBATES: JURISDICTION.—The Constitution grants to the Court of Probates, jurisdiction " in all matters testamentary and of administration." This grant is full, complete, and exclusive, and embraces every incidental power necessary to the proper administration of estates.

4. SAME.—The Court of Probates has jurisdiction upon the final settlement of an administrator's account, when all the parties are before it, by regular service of process, to render judgment and award execution against the distributees who have previously received their distributive shares, for any balance that may be due the administrator on account of commissions allowed, or disbursements for the benefit of the estate.

5. SAME: COMMISSIONS MAY BE ALLOWED BEFORE FINAL SETTLEMENT.—The Court of Probates may allow commissions to an administrator, or executor, before final settlement. Revised Code, 452, art. 109.

APPEAL from the Court of Probates of Yazoo county. Hon. Robert B. Mayes, judge.

At the September term, A.D. 1857, the appellee, who was the widow of Philip J. Burrus, deceased, applied for and obtained letters of administration on his estate, executing a bond, with good sureties, in the penalty of $130,000. In October afterwards, she returned an appraisement of the personal property, which amounted to $64,856. At the time of her appointment, she obtained an order to sell, or consign, the crop then growing. In pursuance thereof, the cotton, amounting to 181 bales, was sold for over $8000, which sum was applied to the payment of debts. In

December, 1857, the estate was distributed, by agreement, between her and the two heirs, leaving about $8000 of debts unpaid, each distributee assuming to pay one-third of them.

In June, 1858, she filed her first annual account, and prayed for citation against the heirs, and that the account might be passed as a final account.

From this account, it appeared that assets had come to her hands to the amount of over $70,000; and she claimed therein credit for commissions on that sum, at five per cent.

The heirs appeared, and filed an exception to the claim for commissions, on the ground that it was too high, but admitted the correctness of all the other items of credit.

On the trial, George M. Powell, one of the heirs, testified that the estate of decedent consisted of a plantation, negroes, stock, &c., and the growing crop; that the overseer, who had been employed by the intestate, remained on the place till the first January, 1858; that the administratrix lived on the place; and, as the crop was gathered, it was sent to Yazoo City, and a part sold there, and a part shipped to New Orleans, and there sold, and the proceeds applied to the payment of the debts of the deceased. About the last of December, 1857, Mrs. Burrus sold out her interest in the estate to the distributees. The negotiation for this arrangement was pending for some time. Mrs. Burrus was represented by several lawyers, who attended to this, and all other matters for the estate. Witness and the attorneys had frequent interviews on the subject; it was rather a troublesome matter. Witness and the other distributee wanted very much to make the arrangement, and get possession as early as possible. They took possession in January, 1858. Witness thinks that the administratrix had but little trouble; that, though she was on the place, yet the overseer attended to gathering the crop; thinks that $500 would be exorbitant pay; thinks Mrs. Burrus incompetent, but knew of no loss to the estate by mismanagement.

F. Barksdale, for the distributees, stated: that the deceased transacted his business with Barksdale & McFarlane, in Yazoo City, of which firm witness was a member; that deceased's estate was not in an embarrassed condition, and was easily managed. Mrs. Burrus stated to him, that she had some separate property on the

plantation, and thought she had better administer, to protect it. Witness was asked, what was a reasonable compensation for administering the estate, and if $500 was sufficient? He declined to estimate the compensation, but stated he would not execute the bond for $500; although, if he had been interested, as Mrs. Burrus was, he would not have made commissions an object. He also stated, that Mrs. Burrus seemed to be attentive to the business of the estate; that she frequently came from the plantation to Yazoo City (about fourteen miles distant), to see about the business. She paid the debts in the usual way.

This was all the evidence, besides the record of the court, in the administration of the estate.

The court sustained the exception to the commissions claimed in the account, to the extent of allowing only four per cent. commissions,—amounting to $2826.78.

On stating the account, thus reformed, there was a balance of $3643.34, in favor of the administratrix. The court decreed, that two-thirds of this sum should be paid by the distributees, and awarded execution therefor against them.

From this decree, the distributees appealed.

*Burrus* and *Armistead*, for appellants,
Cited *Cherry* v. *Jarratt*, 25 Miss. R. 226.

*Fulton Anderson*, on same side.

I presume it will not be denied, that a manifest abuse of the discretion reposed in the probate judge, in the allowance of exorbitant commissions to the administrator, may be assigned as error. *Cherry* v. *Jarratt*, 26 Miss. 226; *Satterwhite* v. *Littlefield*, 13 S. & M. 307.

That there was a manifest abuse of the power in this case, and that it was not exercised, in the language of this court, "according to reason, justice, and sound policy," is easily shown from the proof.

The administratrix, by the decree of the court, was allowed about $3000 as commissions. What service did she perform, in consideration of this large sum? She took out letters on the 29th September, 1857, and about the 7th November, 1857, returned an

inventory of about $64,000 worth of property. She remained on the plantation (it being her place of residence), and, as the cotton crop of that season was shipped and sold by Barksdale, she appropriated its proceeds to the payment of debts, either by drafts or verbal orders,—thus paying about $8500. (See her petition and account, pp. 1, 2, 3.) This was done during a period of two or three months, from September 29th, until some time in December; and during that time, she went occasionally to Yazoo City, about fourteen miles distant, attending to this business. This constitutes the whole amount of the services performed by her. The estate was unembarrassed, and easily managed, consisting of a plantation and negroes, under the charge of an overseer. At the end of this time,—not more than three months from the date of her letters,— she gave up the distributive shares of the appellants, and sold them her own distributive share, and had nothing more to do with the estate,—leaving it, in fact, unsettled, and about $8000 of debts unpaid, which were, however, assumed by appellants.

For living, then, on the place (her place of residence), and, during a period of three months, superintending the shipment of a crop of 181 bales, and paying out the proceeds,—amounting to about $8500,—she receives nearly $3000.

If this be not a manifest abuse of the discretion of the court, and an unreasonable and exorbitant allowance, which ought to be corrected in this court, it would be difficult to imagine a case which would call for the exercise of this court's revisory power.

2. The Probate Court did not have power, on the settlement of the account, to direct an execution to issue against the appellants. The court's power extended no further, than to settle the account, and make a reasonable allowance. But to decide that the appellants were liable to pay said allowance, and to give a judgment against them for the same, certainly exceeded its power. The parties were cited to contest the settlement of the administratrix's account, if they thought proper, but not to try the question, whether they were indebted to her in the sum of the allowance which might be made to her. This was an individual liability, which can only be ascertained and adjudicated in a court of common law.

The power of the court being confined to matters testamentary, and of administration, in orphan's business, and allotment of dower,

&c., certainly does not reach so far, as to reach a question of the liability of individuals (though they stand to the estate in the relation of distributees), to pay the administrator for his services. It cannot compel a mere stranger to deliver over property to the administrator, however clear it may be, that it is property of the estate, much less could adjudge such person to be a debtor to the administrator, and give judgment against him. Nor does the fact, that such person happens to be a distributee, make any difference, for he is a mere stranger, except for the purpose of receiving or enforcing distribution. *Clement* v. *Houston*, 8 S. & M. 389; *Phillips* v. *McLoughlin*, 26 Miss. 597; *Smith* v. *Craig*, 10 S. & M. 451.

3. There was no final settlement in this case, the administration had not been open a year, no publication had been made to creditors to present their claims, nor had the time elapsed, within which such claims might be presented, and there were yet $6000, or $8000 of debts, outstanding and unpaid, and these creditors were not before the Court. The decree itself does not profess to discharge the administratrix, and could not do so with the glaring fact, that the debts were not paid, staring in the face of the court. Hence, it is plain, that this is not, and cannot be a final settlement, and until such final settlement, no allowance can be made to the administrator. Code p. 452, art. 109; Hutch. C. pp. 673–674; Ch. 49, art. 4, s. 3; *Merrill* v. *Moore*, 7 How. Rep. 271.

*Gibbs* and *Wilkinson, Hamer* and *Henderson*, for appellee.

The only error complained of by counsel, in the Probate Court, is the allowance of commissions, at four per cent. on the amount of the estate distributed.

This court has heretofore held, that this is so much a matter of discretion in the Probate Court, that they will not interfere with its exercise, unless where there has been manifest abuse. *Satterwhite* v. *Littlefield et ux.* 13 S. & M. 307; *Cherry* v. *Jarátt*, 25 Miss. R. 221.

Has there been such manifest abuse in this case, as to call for the interference of this court.

What are the facts as disclosed by the record. Philip J. Burrus died intestate, leaving an estate worth about $60,000, and not very

much embarrassed; he left a widow, who administered, and two children by a former marriage, Sophia, the wife of George M. Powell, and James H. Burrus. In less than one year, the whole estate is settled up and distributed, the debts paid off, or arranged, and the property in the hands of the distributees; the administratrix merely retaining her letters to give creditors (if any such present themselves), a remedy against her, and she protecting herself by taking refunding bonds of the distributees. There is no exception to any item in the whole account, except the commissions; there is no complaint that a dollar has been lost to the estate, and there is not a dollar charged for attorneys' fees. There is no allowance asked for any property lost, perished, or decreased, belonging to the estate; but, on the contrary, as her accounts show, the profit on the cotton crop, which she charges herself with, exceeds the appraised value, to about the amount of commissions allowed.

By the terms of the 109th art. of the Code, p. 452, the court is directed, either on partial or final settlement, to allow an administrator, as compensation for his trouble, not less than one nor more than seven per cent. on the amount of the estate administered. " This allowance is said," in *Satterwhite* v. *Littlefield*, " to be left discretionary with the Court of Probates between the extremes indicated, and is intended to cover all their compensation. Within this limit it may be made to vary according to circumstances. Out of it, they must pay their own expenses, and fees of counsel for advice touching their duties in the conduct and management of the estate. If he have not the requisite knowledge to discharge the duties of the office he undertakes, he must pay for its acquisition himself.

" His commissions are intended to cover all the charges which he is authorized to make against the estate, in the course of administration."

This language is quoted, to show what the legislature meant by the phrase " compensation for his trouble."

The court will observe that the allowance is a medium between the extremes allowed by law. The Probate Court must therefore have treated it as an administration not more than usually troublesome; but then the trouble was averted by her attorneys, several

of whom she is proved to have employed, and whose compensation comes out of her pocket.

There were but two witnesses examined, the first, George M. Powell, is the husband of one of the distributees. He testifies that the administratrix was incompetent. Suppose it be so—and very few ladies are competent to manage an administration—yet is there any damage or loss consequent upon her incompetency? If she was incompetent, and yet the estate has been skilfully managed by persons employed by her, surely she should be remunerated for the charges she has been at. If, indeed, she had attempted to manage the estate without legal aid, if she ran it in debt, paid illegal charges, kept the distributees out of their shares, plunged the estate into almost interminable litigation, or mismanaged and squandered the estate in any one of the many ways in which estates may and often are squandered and mismanaged, then, perhaps, the objection might be raised; but surely not here, when there is not even a complaint of loss. Powell also testifies that five hundred dollars would be exorbitant pay: this is less than one per cent. on the estate, and less than the law allows in any case. Mr. Barksdale, the other witness (and both witnesses were called by the distributees), stated that he would not have given the bond for five hundred dollars; he declined stating what he thought the services of the administratrix worth, but stated that he would not administer on an estate in which he was interested, solely to charge commissions.

The court will also bear in mind that the administratrix, as distributee, has to pay one-third of the commissions allowed. Now, it is said, that the allowance was manifestly unjust, because she was interested in the estate; and, in promoting the interest of the estate, she thereby promoted her own. To this we answer, that the law gives in all cases the widow the right to administer in preference to all other persons, and, if she chooses to exercise her legal right, although she do it for her benefit instead of her injury, if the estate under her charge is benefited thereby, she surely should not be placed in a worse condition on that account. Has she not complied with her duties? Has she not returned a true and perfect inventory? Has she not paid the debts as far as they have been presented? Has she not made distribution? Aye;

and before the time required by law to satisfy the distributees. Has she not truly and fully accounted with the court? All of these things have been done; but, because the distributees cannot see that the administratrix has allowed herself to be drawn into litigation, they object to the allowance of commissions. Within one month after the time in which by law she could be sued, the debts are paid off or arranged, and, two months before the distributees could by law even apply for distribution, the whole estate is distributed to please the distributees; and yet, because the administration is conducted by the attorneys of the administratrix, and without any great personal trouble to her, she is not to be allowed enough to repay her what she has paid out of her own pocket.

We respectfully submit, that if the allowance in this case be a "manifest abuse" of the discretion vested in the Probate Court, there are few persons who would be willing to undertake the thankless task of administering on an estate, for the purpose of benefiting the distributees by a speedy settlement.

If by "compensation for their trouble," the legislature intended to pay an administrator for putting the creditors and distributees of an estate to trouble in obtaining their just right, and if an administrator is to get more pay the longer he keeps an estate on hand: if this be the legal construction of the act, the administrator will be in a better condition than the distributee; the trustee derive more profit than the *cestui que trust.*

HARRIS, J., delivered the opinion of the court.

In this case, four grounds of error are relied on by counsel for the appellants.

1st. An abuse of its discretion by the Probate Court, in allowing four per cent. commissions to the administratrix.

2d and 3d. The want of jurisdiction in the Probate Court, to render judgment and award execution against the distributees, for an amount found to be due her from them, in the course of administration.

4th. The allowance of commissions, before final settlement.

The first ground assumed, both upon an examination of the cases adjudicated in this court, and upon principle, we think, is wholly untenable, under the circumstances before us.

In the case of *Merrill* v. *Moore's heirs*, 7 How. R. 271 (which was an appeal from the judgment of the Probate Court, allowing the administrator *ten per cent.* on the appraised value of the estate, $26,314, instead of on the whole amount of the estate administered, which was $94,863), the court, after remarking, that "it is wrong to impose onerous duties upon men, and to deny them compensation for their discharge, and that such a rule would tend strongly to make them negligent in the performance of trusts, or to make them seek indemnity in some other way," proceed to determine, "that the allowance, in this case, should be made to extend to the whole estate administered." This opinion was referred to, and approved, in the case of *Shurtliffe* v. *Witherspoon*, 1 S. & M. 621.

In the case of *Satterwhite* v. *Littlefield and wife*, 13 S. &. M. 307, when the abuse of its discretionary power was directly the subject of discussion, the court said: "It is so much a matter of discretion, that we should not be disposed to interfere with its exercise, unless where there has been manifest abuse."

And in the later case of *Cherry* v. *Jarratt*, 25 Miss. R. 221, this court announced, that " only in cases of flagrant abuse of the discretion vested in the Probate Court by the statute, would they interfere with its judgments."

In the case now under consideration, *four per cent.* was allowed the administratrix; and it is insisted, that this allowance, "in view of the testimony," is such an abuse of its discretion by the court below, as calls for the interposition of this court.

If we should look *alone*, to the evidence of the *single* witness who undertakes to value the services of the administratrix, we should find ourselves called upon to reverse, not only the judgment of the Probate Court, but the act of the legislature also. If it be true, as this witness testifies, "*that $500 was exorbitant pay*," for administering, and successfully settling and distributing, an estate amounting to more than $70,000, in about ten months or less, then, not only this Probate Court, but the legislature, have been egregiously mistaken in their estimate of what is due to this class of public offices, for the *least* service. *One per cent.* is the smallest amount the legislature permits the court to allow: this small sum would greatly exceed the sum deemed by this witness " *exorbitant pay.*"

We think, from the evidence in the record before us, that this witness is scarcely less unfortunate in his statement as to the "incompetency" of the administratrix to conduct the trust she had assumed, in the exercise of her legal rights.

The record shows, that she took charge of the estate on September 29th, 1857. Her first step in the intricate, responsible, and important business committed to her care, is not only evidence of *her* prudent caution, but is worthy of more frequent imitation. Knowing that she had not made legal science either her study or practice, she resorted to the aid of professional gentlemen, skilled in both; thereby protecting herself and the estate, as well as these distributees, against the probability of loss, from her ignorance of legal rules. It is quite probable, that for this necessary aid, to procure which commissions are allowed her by law, she was compelled to expend as much, or perhaps even more, than the "*exorbitant*" sum of $500.

Immediately on her appointment, at September term, 1857, she executed bond. Commissioners were also appointed. The inventory and appraisement were made out, and returned to the Probate Court, on the 14th October, 1857, and all necessary and proper steps speedily taken for an early settlement of the estate.

The crop was gathered, and, under an order obtained the very day she was appointed, judiciously sold (181 bales), and faithfully and promptly applied to the discharge of the claims of creditors, *pro tanto;* and on the 23d day of June, 1858, she made application to the court for notice to the distributees, preparatory to a final settlement, according to an account then filed, and now in the record before us. This account shows a full administration, except as to the payment of certain debts, which these distributees, appellants, obligated themselves to pay, upon distribution made in December previous (1857); they having executed refunding bonds, according to law.

The idea made so prominent, both in the testimony and in the argument, that because the administratrix did not *personally* undergo the *labor* of administration, but chose to rely on competent agents, she should, therefore, only be entitled to compensation commensurate with her personal service, is certainly novel. According to this reasoning, if she had secured no legal aid, but pur-

sued the more usual method of blundering from error to error, through a long course of administration, ending in ruin to her and disaster to the estate, she would indeed have earned commissions, to the utmost limit of the court's discretion. But it is not to compensate for the amount of trouble suffered, or superinduced, that the law makes provision ; it is to secure responsibility, fidelity, careful and prompt attention to the trust imposed. That the administratrix, by the assistance she invoked, and by the diligence and promptness employed, rendered her burden light, and the time of her employment short, was *not more* beneficial *to* her, than *to* the interests of the estate, and especially of these distributees. We think, therefore, the allowance should not be disturbed in this court.

It is next insisted, in the second and third assignments of error, that the court had no power to render judgment and order execution against appellants, for the balance found to be due the administratrix from them, on settlement.

This point, involving to some extent, the jurisdiction of one of the most important courts created by the Constitution, has not been free from difficulty.

The Constitution declares, that "a Court of Probates shall be established in each county of this State, with jurisdiction in *all matters* testamentary, and of administration," &c.

This jurisdiction was certainly intended to be full, complete, and exclusive, as to the "*matters*" thus confided. It was intended to be *full,* so as to embrace all subjects, all parties, all cases, necessary to be included in its action, for the proper adjudication and determination or settlement "of matters testamentary, and of administration." It was designed to be *complete,* so as to afford adequate remedy, exact justice, and ample relief, to all parties, necessarily affected by its proceedings. It was made *exclusive,* by the very nature of the grant, that it might meet with no delay, obstruction, or conflict, in adjudicating and settling "all matters testamentary, and of administration." The grant of this general power to the Court of Probates, impliedly draws to its aid every incidental power and authority, *necessary* to the proper discharge of its important functions.

Keeping in view these objects of this provision in the Constitution,

and the means necessary to accomplish them fully and successfully, let us inquire whether they embrace the case under consideration.

Let it be premised, that from the case of *McCoy* v. *Rhodes*, 7 How. R., to the late case of *Hill* v. *Hardy & Williams*, 34 Miss. R., we find no precedent which furnishes us authority for denying the jurisdiction claimed in this case.

Here then, are parties interested in the subject-matter for determination, who have been reached by the process of the court, and are legally in its presence.   Here is a " matter of administration,"—a final account,—between parties interested therein, and before the court, upon regular citation, for that purpose.  Here the appellants (distributees) still further submit themselves to the jurisdiction of the court, by admitting the statements contained in the petition, and the correctness of the account filed, except in the single matter of commissions; to the allowance of which, they file formal exceptions, invoking the judgment of the court, in their favor, on the issue thus made between them and the administratrix.

The record shows, that the whole estate had been previously distributed by their procurement, and without the authority of the court ; and that they had each received one-third thereof (their full distributive share).   That they had possessed themselves thus of property in the course of administration, and liable to the payment of its expenses, as well as the debts of the estate, by a pledge to the administratrix to settle such debts and liabilities.

Under this state of facts, the appellants claim, that they had a right to invoke the jurisdiction of the Probate Court, to deprive the widow and administratrix of the allowance for commissions, which she asks, and without the settlement of which, this matter of administration cannot be adjusted, and the estate finally closed ; yet they deny its power over *them*, to compel a compliance with the very adjudication they invoked, on the issue they had made.

They claim the privilege of speculating on the chances of a judgment in their favor, without the risk of liability to a judgment against them ; that they may create a litigation in the Probate Court, upon their direct interference, and for their benefit, involving costs and expense ; and yet, when found in the wrong, by the judgment of the court, in " matter of administration," it has no power to pronounce that judgment, and enforce its execution.

Can such a monstrous assumption, such an unjust, unreasonable pretension, which defies the power of the court except when employed for their advantage, and thus thwart its beneficent interposition in the settlement of estates, at the very moment of its final action, be tolerated, without destroying its power and its usefulness, in terminating litigation, in matters testamentary and of administration ?

We think not. Having acquired full jurisdiction of the subject-matter of litigation, and of the parties, and made the necessary investigations to settle the litigation between them, we think justice and sound policy require, that the litigation should be fully considered and adjudicated in that jurisdiction. And such we believe to be the plain and obvious intention of the provisions of the Constitution under consideration.

If further reasoning were wanting, the indication of legislative opinion on this subject, would be at least persuasive towards the conclusion at which we have arrived. By the 31st article of the 60th chapter of the Code, p. 431, it is provided, that "whenever the Probate Court shall render an order, judgment, or decree for the payment of money against any executor, administrator, or guardian, *or any other party litigant* therein, a compliance with such order, judgment, or decree, may be enforced by process of *fieri facias*, returnable to a term not less than six months from its *teste*, which may be levied on the land and goods and chattels of the defendant or party."

This provision precisely covers the case in controversy, and, we think, gives just efficiency to the constitutional powers of the Probate Court.

The last assignment of errors, that commissions cannot be allowed until final settlement, is fully answered by the statute. Code, p. 452, art. 109.

Let the judgment below be affirmed.