# Gassenheimer v. Gassenheimer.

*Bill in Equity by a Surviving Husband for sale for Division Between Himself and Infant Child of his Life Estate and the Infant's Reversion in Lands of his Deceased Intestate Wife.*

1. *Estate of infants—Jurisdiction of equity.*—Courts of equity have original jurisdiction to order the sale of any interest of an infant in lands, whatever the nature of such interest, whenever it clearly appears that such sale would inure to the real advantage of the infant; and a sale may be ordered not only for the purposes of maintenance, and education, or to remove incumbrances, but also for purpose of reinvesting the proceeds of the sale.

2, *Same. Sale for reinvestment, when will be ordered by courts of equity.*—Sales of an infant's interest in lands, for mere purpose of reinvestment are generally confined to cases where the lands are deteriorating in value; or because they do not yield sufficient income to keep down burdens to which they are liable, or where the income therefrom is greatly disproportionate to the market value of the property.

3. *Same.—American Mortuary tables not applicable in determining the advisability of the sale of an infant's estate in lands by a court of equity, for purpose of reinvestment.*—In the event of an actual necessity for the sale of an infant's lands a court of equity in considering an order of confirmation, would look to the Mortuary Tables in ascertaining the value of the reversion; but in determining the question as to whether it would be to the interest of an infant that his lands should be sold for reinvestment, the court engages in no speculations, it indulges in no inferences, however probable, and for this purpose the Mortuary Tables will not be looked to.

APPEAL from the City Court of Montgomery.
Heard before Hon. THOS. M. ARRINGTON.
The facts are set forth in the opinion.

LEE H. WEIL, for appellant,

GRAHAM & STEINER, for appellee.

BRICKELL, C. J.—The original bill filed by the ap-

pellee, alleges that on the 22d day of February, 1895, his wife died intestate seized and possessed of a dwelling house and lot, situated in the city of Montgomery, of the present value of $12,500. That she left as her only heir-at-law, a child, the offspring of the marriage, the appellant, of the age of eight years. At the time of the death of the mother, the premises were occupied as the family residence, but now they are too large for the use of the appellee and the appellant. The appellee is of the age of forty-one years, and according to the American Table of Mortality has an expectancy of twenty-seven years of life. That a sale of the premises would be to the interest of the appellant, and that ascertaining the value of her reversion according to the Tables of Mortality, he is willing that twenty per cent. of the purchase money be added to such value, and if that would not equal five thousand dollars, that this sum shall be decreed to the appellant. And if this sum was put at interest, on the arrival of the appellant at full age, it would exceed the value of the fee simple in the premises. There was testimony taken which shows the mere fact, that if the reversion were converted into money, and the money loaned at interest, and the interest compounded annually, that the aggregate sum on the arrival of the appellant at full age would equal or exceed the present value of the fee in the premises, and hence, the witnesses express the opinion that a sale would be of benefit to the appellant. A decree of sale was rendered, from which the appeal is taken.

It has long been the settled doctrine in this State, that it is within the original jurisdiction of courts of equity to decree the sales of lands of infants, not only for their maintenance and education, or to remove incumbrances, or to satisfy charges resting thereon, but for the investment of the proceeds of sale for the general interest and advantage of the infant. *Ex parte Jewett*, 16 Ala. 409; *Rivers v. Durr*, 46 Ala. 418; *Goodman v. Winter*, 64 Ala. 410; *Thorington v. Thorington*, 82 Ala. 489. The exercise of the jurisdiction is not dependent on the nature and quality of the estate of the infant; whether it is an absolute estate of present possession and enjoyment; or a future estate, a reversion or remainder, though as was said in *Goodman v. Winter*, 64 Ala. 410, *supra*, because of the uncertainty of the value of a future or contingent

[Gassenheimer v. Gassenheimer.]

estate, lest there should be a sacrifice of the interests of the infant, the court would be the more reluctant to decree a sale. The reason underlying the doctrine is, that as the infant labors under disability, is incapable of managing and disposing of property, the court owes to him the duty of protection, and of controlling and administering his property, so as to promote his convenience and interests ; a similar reason to that which prevails when the court decrees a sale for his maintenance and education. In the first of our reported cases, affirming the existence of the jurisdiction to decree a sale for the purpose of the investment of the proceeds, it was said by Dargan, J. : "It would seem but reasonable, that a court of equity would order a sale of the real estate of an infant, where it was made manifestly to appear that his interest demanded it. But then the facts which render the sale necessary should be alleged, as well as proved, that the chancellor may clearly see that the interest of the infant would not be prejudiced, but on the contrary, promoted by the sale.—"*Ex parte Jewett*, 16 Ala. 409, *supra*. And it may be observed, the jurisdiction should be exercised sparingly and with the utmost caution. Though in form the proceedings may be adversary, they are often instituted and conducted by parties of interests adverse to the interests of the infant, for the promotion and advancement of such interests, rather than of the interests of the infant, and the court while intending to protect, may be made the instrument of injustice to him.

When sales have been decreed for the mere purpose of otherwise investing the proceeds, it has generally been because the lands were deteriorating in value, and from some cause probably subject to continuous deterioration; or because they will not yield income sufficient to keep down burdens to which they are liable, or the income was greatly disproportionate to their market value. The case made by the bill does not come within either of these classes. The proposition on which the bill proceeds is, that considering the age and state of health of the tenant for life, if the value of the reversion be ascertained according to the American Mortuary Tables, and he should add to the value so ascertained twenty per cent of the proceeds of the sale of the entire fee, the convenience and interest of the infant would be promot-

ed, because if the sum thus produced should be put at interest, the aggregate of principal and interest on the probable falling in of the life estate, or on the arrival of the infant at full age, would exceed the probable value of the entire fee. The value of these mortality tables is of constant recognition by the courts, and the cases are numerous in which from necessity the courts act upon them in determining the probabilities of human life. They are founded upon the basis of the average duration of the lives of a great number of persons, and have been employed in apportioning burdens to which an estate is subject, between a life tenant and a remainderman or reversioner; or in ascertaining the probable value of a wife's contingent right of dower during the life of her husband; or the value of an outstanding life estate, a breach of a covenant of seizin.—15 Am. & Eng. Encyc. of Law, 587. The employment of them for these or like purposes, is quite a different matter from their employment, when a court of equity intervenes to decree a sale of the remainder or reversion in lands of an infant. The basis of the jurisdiction is the protection of the infant; the promotion of his rights and interests; these are the considerations which move the court. It is not in the relation of an arbitrary or discretionary vendor, who may go into the market and sell upon whatsoever terms and conditions he may conceive to be to his interest and and advantage. The court engages in no speculation; it does not take the risks of an insurer; and save so far as is of necessity incidental to the jurisdiction it exercises, indulges no inferences, however probable. If a necessity existed for the sale of the reversion; if provision for the maintenance and education of the infant demanded it, in passing on the confirmation of the sale, the court will doubtless consult and be guided by the mortuary tables. There could be no better method of ascertaining the value of the reversion, and whether there should be confirmation or vacation of the sale. So, in any other event in which a sale might be decreed. In all these cases, there is a pre-existing necessity or cause for the sale—a necessity or cause, which shows that the convenience and interests of the infant will be promoted. At best, as is properly said in argument, the proposition on which the bill proceeds, is a mere theory, and rests upon too many uncertainties and contingen-

cies, to authorize a decree of the sale of the lands of the infant. The fee resides in the infant—the life estate is carved out of it, and is of uncertain duration. That it will continue for any definite period is but an expectancy derived from the average duration of the lives of a great number of persons. It is not contemplated that all these persons will reach or survive the defined period, that some will not is estimated as certain, though it is not possible to distinguish them. The life estate may fall in, the day or year after the sale; if it should, the reversion would have been sacrificed; for it there would not have been adequate compensation to the infant. The reversion is not burdensome to the infant—the tenant for life is answerable for voluntary or permissive waste; he cannot from the want of care suffer the premises to fall into decay, and is bound to the duty of keeping down the taxes, the only involuntary or compulsory charge to which they are liable.—4 Kent, 76; *DeBardelaben v. Stoudenmire*, 82 Ala. 574. If the reversion be converted into money, he is relieved of these burdens; and the infant will be compelled to bear the taxes to which the money, its supposed value, may become subject. In whatever aspect the case may be viewed, the infant takes the risk of the insurer of the life of the father—a risk the insurer, for his own protection takes only in connection or combination with a number of similar risks. We are not of opinion, the necessities or the manifest convenience and interest of the infant demand a conversion of the reversion into money—we are not satisfied that her interests would not be prejudiced rather than promoted by the conversion.

The result is, the decree of the city court must be reversed, and a decree here rendered dismissing the bill at the costs of the appellee in this court and in the city court.

Reversed and rendered.