MALLEN et al. v. RUTH OIL CO. et al.

(District Court, E. D. Oklahoma. April 19, 1915.)

No. 2089.

1. GUARDIAN AND WARD ☞113—MANAGEMENT OF ESTATE—LEASES—DURATION.

Const. Okl. art. 7, §§ 11, 13, provides for the establishment of county courts and gives them jurisdiction to appoint guardians of minors, etc., settle their accounts and transact all business pertaining to the estates of minors, etc., including the sale and distribution of their estates. Rev. Laws 1910, Okl. § 3330, provides that the court appointing a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward. Section 6569 provides that the county court, on application of the guardian or any person interested, may authorize the investment of the proceeds of sales and any other of the ward's money in the manner most to the interest of all concerned, and that it may make such further orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require. Section 6547 empowers guardians to lease and grant mineral oil and mineral gas, in consideration of a royalty or a part or portion of the production thereof, under the same procedure in the county court, as now provided by law, where the consideration is money, and has been construed as referring to section 6569 in its mention of procedure and to require the county court's approval of oil and gas leases. *Held* that, where it is for the best interest of the minor's estate, the county court has authority to authorize a guardian to make an oil and gas lease without specifically limiting the lease to the minority of the ward, as county courts are given the powers which formerly belonged to courts of equity, and such courts, acting in loco parentis, and as general guardian for a minor, would do for him and his property what he himself in all probability would do, but for his disability.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 405, 406; Dec. Dig. ☞113.]

2. GUARDIAN AND WARD ☞113—LEASE—JUDGMENT—COLLATERAL ATTACK.

When an Oklahoma county court, by approving a guardian's oil and gas lease, extending beyond his ward's minority, has manifested its finding that such lease is for the best interests of the estate of the minor, such finding is impervious to collateral attack.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 405, 406; Dec. Dig. ☞113.]

At Law. Action by William D. Mallen, Jr., and others, against the Ruth Oil Company and others. On demurrer. Demurrer sustained.

O'Hare & Davidson, of Muskogee, Okl., and Bert Van Leuven, of Nowata, Okl., for plaintiffs.

Biddison & Campbell, of Tulsa, Okl., and Lambert & Sloop and Stanford & Stanford, all of Independence, Kan., for defendants.

Geo. S. Ramsey and Edgar A. De Meules, both of Muskogee, Okl., and John M. Chick, of Tulsa, Okl., amici curiæ.

CAMPBELL, District Judge. As to whether the demurrer in this case is well taken or not depends upon whether the county courts of this state may order guardians of minors to execute oil and gas leases of the ward's land for terms extending beyond minority: If such leases are valid after the minor reaches majority, the demurrer should be sustained. If not, it should be overruled.

[1] Section 11 of article 7 of the Oklahoma Constitution provides for the establishment of the county court in each county, which shall be a court of record. Section 13 of article 7 of the state Constitution provides:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof."

The effect of the foregoing constitutional provision, so far as it relates to the question now being considered, is to clothe the county court with full, complete, and exclusive jurisdiction and authority to transact all business appertaining to the estates of minors, including the sale, settlement, partition, and distribution of the same. The jurisdiction is full and complete, so far as relates to matters appertaining to business of the estates of minors, because it applies to *all* business of that character. It must be exclusive, because it is not to be presumed, in the absence of clear provisions to the contrary, that the framers of the Constitution intended there should be any division of authority between the county courts and any other courts of the state relating to this important matter, in view of the embarrassment and confusion which such divided authority would lead to. The jurisdiction is neither in plain terms nor by implication lodged in any other court.

By section 3330 of the Revised Laws of Oklahoma it is provided that:

"In all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward."

By section 6569 of the Revised Laws of Oklahoma it is provided:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein;

and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

By section 6547 of the Revised Laws of Oklahoma it is provided:

"Guardians of infants and insane persons are hereby empowered to lease and grant mineral oil and mineral gas, in consideration of a royalty or part or portion of the production thereof, and under the same procedure in the county court, as now provided by law, where such consideration is money."

The "procedure" mentioned under which such lease shall be made the Supreme Court of this state has held refers to the portion of section 6569, supra, which provides:

"The county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

It is therefore held that oil and gas leases made by the guardian under authority of section 6547, supra, in order to be valid must be first approved by the county court. Duff et al. v. Keaton et al., 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472. It is clear therefore that the guardian may, with the approval of the county court, make a valid oil and gas lease of his ward's land for a period covering at least the term of minority. The statute authorizing such leases does not undertake in terms to fix the period for which such leases shall be made to run. If the county court is without authority to authorize the guardian to make an oil and gas lease beyond the term of minority "when circumstances require," then it must follow that cases will from time to time arise when the court will be seriously hampered in the transaction of business appertaining to the ward's estate and will be precluded from making such orders for the management and disposition of the estate as the circumstances require. It is a matter of common knowledge that in the development of the oil business new territory is constantly being proven. When a paying well is brought in in new territory, the rush for leases is very like the rush for claims in a new mining camp. Frequently the largest bonuses and the best terms are procured during the first flush of the excitement. But suppose that in such a case the ward's land is in the midst of the most desirable territory, but he is say 19 or 20 years old, so that, if the court and the guardian may not make and approve a lease beyond his minority, its term can only be one or two years as the case may be. His neighbors adjoining may lease for 10, 15, or 20 years, and so much longer as oil and gas may be found in paying quantities. It is obvious that the purchasers of such leases would give vastly more for the long-term leases than the one running only for one or two years. It might reasonably happen that this handicap against the leasing of the ward's land would make it impossible to effect any lease at all, and that immediate development on adjoining tracts would result in serious drainage of the land, which, during a year or two, might practically ruin it as an oil and gas property, and thus divest it of the greatest element of value it contains, and leave to the ward when he reaches majority the mere shell. Now, in a case of this kind, a most important feature of business appertaining to the estate of the ward is the dis-

position of his land for oil and gas purposes to the very best advantage. The ward, by reason of his disability of minority, cannot act. It is for this reason that the county court is authorized to act for him.

In the exercise of its exclusive jurisdiction to transact all business appertaining to the estates of minors, the county court must, I think, be held to have all the powers relating to the conduct of minors' estates which formerly belonged to courts of equity. In Gassenheimer v. Gassenheimer, 108 Ala. 651, 18 South. 520, it is said:

"It has long been the settled doctrine in this state that it is within the original jurisdiction of courts of equity to decree the sales of lands of infants, not only for their maintenance and education, or to remove incumbrances, or to satisfy charges resting thereon, but for the investment of the proceeds of sale for the general interest and advantage of the infant. Ex parte Jewett, 16 Ala. 409; Rivers v. Durr, 46 Ala. 418; Goodman v. Winter, 64 Ala. 410 [38 Am. Rep. 13]; Thorington v. Thorington, 82 Ala. 489, 1 South. 716. The exercise of the jurisdiction is not dependent on the nature and quality of the estate of the infant—whether it is an absolute estate or present possession and enjoyment, or a future estate, a reversion, or remainder—though, as was said in Goodman v. Winter, supra, because of the uncertainty of the value of a future or contingent estate, lest there should be a sacrifice of the interests of the infant, the court would be the more reluctant to decree a sale. The reason underlying the doctrine is that, as the infant labors under disability—is incapable of managing and disposing of property—the court owes to him the duty of protection, and of controlling and administering his property so as to promote his convenience and interests; a similar reason to that which prevails when the court decrees a sale for his maintenance and education."

In Gibson's Suits in Chancery, § 970, it is said:

"Whenever it is necessary for the welfare of an infant, idiot, or lunatic to convert his realty into personalty, or his personalty into realty, or to invest his money, or to ratify or avoid his contracts, the chancery court has authority to order it to be done, and to superintend the execution of its order. In short, the chancery court, acting in loco parentis, and as general guardian for minors, idiots, lunatics, and persons of unsound mind, will do for them and their property what they themselves would in all probability have done if possessed of good reason and good conscience."

In Huston et al. v. Cobleigh, 29 Okl. 793, 119 Pac. 416, a case involving the validity of an oil and gas lease executed by a guardian in Indian Territory prior to statehood for a term beyond the minority of the ward, approved by the United States Court for the Northern District of Indian Territory, sitting as a court of probate, the land being at the time in the hands of a receiver of that court, Justice Williams says:

"The lease was approved by the Secretary of the Interior, and also by the United States Court, exercising chancery jurisdiction, and also by the same court, exercising probate jurisdiction. It seems to be settled that such court, exercising the powers of chancery, had authority to approve a lease extending beyond the minority of the ward. Ricardi et al. v. Gaboury et al., 115 Tenn. 484, 89 S. W. 98; Marsh v. Reed, 184 Ill. 263, 56 N. E. 306; Branton v. Branton, 23 Ark. 569; Haag v. Sparks, 27 Ark. 594; Hankins v. Layne, 48 Ark. 545 [3 S. W. 821]; Turner v. Rogers, 49 Ark. 51 [4 S. W. 193]."

The framers of the Constitution, recognizing the disability of the minor to handle his own affairs, intrusted his business matters to the

county court. As said in the Gassenheimer Case, supra, the court owes to him the duty of protection and of controlling and administering his property so as to promote his convenience and interests. And as said in the quotation from Gibson's Suits in Chancery, supra, the court acting in loco parentis, and as general guardian for the minor, will do for him and his property what he himself in all probability would do but for his disability.

Now the statute specifically authorizes the guardian to execute an oil and gas lease for the minor's land, subject to the county court's approval, if it shall find .it advantageous to the minor under the circumstances. The statute fixes no limit upon the term of the lease. Does it contemplate a term beyond the ward's minority? A case in point is Beauchamp v. Bertig, 90 Ark. 351, 119 S. W. 75, 23 L. R. A. (N. S.) 659. The guardian, under order of the probate court, had made a lease of certain business property extending beyond the ward's minority. The question was as to whether the ward upon reaching majority might disaffirm the lease. The court said:

"Our statute empowers the probate court, upon being satisfied that it would be for the best interest of the estate of a minor, to make an order authorizing the guardian to rent the lands of such minor publicly or privately, as in his judgment shall be best for the interest of his ward, subject to the approval of the probate court, or the judge thereof in vacation. Sections 3789, 3790, Kirby's Dig. It also gives the probate court power to sell or lease for purposes of reinvestment or putting proceeds on interest. Section 3801, Kirby's Dig. At the common law the guardian in socage could make a lease in his own name of the lands belonging to his infant ward, to continue only till the infant was 14 years of age, unless the latter chose to continue it longer. But 'the common law,' says Drake, Justice, 'in its ever-watchful care of the interest of minors, has suffered their guardians to make advantageous leases for them continuing at the option of the minor beyond the age of 21.' Snook v. Sutton, 10 N. J. Law, 133, and authorities cited. Under the common law, or statutes simply declaratory thereof, leases made by the guardian to extend beyond the term of the guardianship are voidable. Rogers on Domestic Relations, 861, note 5; 15 A. & E. Ency. Law (2d Ed.) 68 and 69, note 1; Emerson v. Spicer, 46 N. Y. 594; Ross v. Gill, 1 Wash. (Va.) 87; Ross v. Gill, 4 Call (Va.) 250; Talbot v. Provine, 7 Baxt. (Tenn.) 502, at page 510; 1 Bac. Abr. Leases; 2 Kent, Com. 228; 1 Wash. Real Prop. 307; Schouler, Dom. Rel. § 350, note 1; Putnam v. Ritchie, 6 Paige (N. Y.) 390; Field v. Schieffelin, 7 Johns. Ch. (N. Y.) 150, 11 Am. Dec. 441; People ex rel. Hannagan v. Ingersoll, 20 Hun (N. Y.) 316. In England from the time of Lord Hardwicke, the High Court of Chancery had no power to lease or sell an infant's real estate without the aid of act of Parliament. The course was to give reference to a master to inquire whether it would be for the benefit of the minors that application be made for an act of Parliament. Russell v. Russell, 1 and 2 Malloy, 258. But the supreme lawmaking power in our state has by the above statutes invested the probate court with power to sell and lease the lands of infants. The matter is left in the judgment of the probate court, and there are no limitations prescribed for the term of lease, and we are of the opinion, from the above and cognate provisions of chapter 76, Kirby's Dig., that none were intended. The best interest of the estate of the minor is the prime and only consideration, and that seems to be the only limit to his discretion within the statutory provisions. Complying with these, the intention of the lawmakers was to give the probate courts plenary power in the premises. Hence the lease made by order of the court was valid, although it was to continue beyond the minority of the infants."

[2] So I conclude that, when the Legislature authorized the guardian to lease the ward's property for oil and gas purposes with the

approval of the county court, without specifically limiting the time for which such lease might be made to the period of minority, it intended to leave the matter to the judgment of the court in the light of what might appear to be for the best interest of the minor's estate, and that where such interest, in the judgment of the court, would be best subserved by a lease for a term extending beyond minority, a lease for such a term made by the guardian and approved by the court is valid. And of course, when the county court, by approving such a lease, has manifested his finding that such lease is for the best interests of the estate of the minor, that finding is impervious to collateral attack.

The demurrer in this case will be sustained.