## CABIN VALLEY MINING CO. v. HALL.

No. 4902.   Opinion Filed February 15, 1916.

Rehearing Denied June 6, 1916.

(155 Pac. 570.)

**GUARDIAN AND WARD—Management of Ward's Property—Oil and Gas Lease.** Under the Constitution and laws of this state the county court may authorize a guardian of a minor to execute an oil and gas mining lease upon the lands of such minor for a period of years extending beyond the minority of his ward.

(Syllabus by the Court.)

Turner, J., dissenting.

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Action by Mary Hall against the Cabin Valley Mining Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. H. Kornegay,* for plaintiff in error.

*Chas. Richardson,* for defendant in error.

*Geo. S. Ramsey, Samuel W. Hayes,* and *James B. Diggs, amici curiae.*

HARDY, J.   Defendant in error, who will be hereinafter referred to as plaintiff, brought this action in the district court of Rogers county against plaintiff in error, who will be designated as defendant, seeking to have set aside a decree of the county court of Craig county authorizing one John T. Hall, as guardian of plaintiff, to make and execute a contract for the extension of an oil and gas mining lease theretofore entered into by said guardian on behalf of plaintiff, and to have canceled and annulled a contract for extension of said lease, entered into in pursuance of said order, and for an accounting.   At the

trial the court rendered judgment in favor of plaintiff, holding said order of the county court to be void, and canceled the contract extending said lease made by virtue of said order and quieted plaintiff's title in the premises. The principal question presented is whether the county courts of this state have authority to authorize a guardian to execute an oil and gas mining lease upon the lands of his ward for a period of years extending beyond the ward's minority, and in this particular case whether the county court had jurisdiction to authorize the extension of the lease theretofore made by the guardian of plaintiff to defendant. The extent of the jurisdiction of the county court must be determined by an examination of the various provisions of the Constitution and the statutes relating thereto, as they have no inherent jurisdiction. *Ozark Oil Co. v. Berryhill,* 43 Okla. 523, 143 Pac. 173; *In re Bolin's Estate,* 22 Okla. 851, 98 Pac. 934.

Section 11, art. 7, of the Constitution provides for the establishment of a county court in each county, which is declared to be a court of record, and prescribes the qualifications of the judge thereof and the terms of his office. Section 12 of article 7 provides that the county court, co-extensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law shall possess certain civil jurisdiction. Section 13, art. 7, is as follows:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, * * * transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons *non compos mentis,* and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. * * *"

Construing section 13, art. 7, *supra*, the District Court of the United States for the Eastern District of this state, in the case of *Mallen v. Ruth Oil Co.*, 230 Fed. 497, reached the conclusion that the county court had authority to ·authorize a guardian to execute an oil and gas mining lease upon the lands of his ·ward for a period of years extending beyond the minority of the ward, and, while the opinion therein is not binding upon us in construing the provisions now under consideration, we quote from the opinion in that case as follows:

"The effect of the foregoing constitutional provision, so far as it relates to the question now being considered, is to clothe the county court with full, complete, and exclusive jurisdiction and authority to transact all. business appertaining to the estates of minors, including the sale, settlement, partition, and distribution of the same. The jurisdiction is full and complete so far as relates to matters appertaining to business of the estates of minors, because it applies to all business of that character. It must be exclusive, because it is not to be presumed, in the absence of clear provisions to the contrary, that the framers of the Constitution intended there should be any division of authority between the county courts and any other courts of the state relating to this important matter, in view of the embarrassment and confusion which such divided authority would lead to. The jurisdiction is neither in plain terms nor by implication lodged in any other court."

Much of the briefs of counsel is devoted to a discussion of the extent of jurisdiction formerly possessed by courts of probate and chancery courts at common law with reference to the management and control of the estates of minors, and many authorities are cited in which the courts have lavished much learning upon a discussion of this question; but, in view of the foregoing provisions

of the Constitution and the statutory provisions hereinafter set out, a review of these authorities is not here deemed necessary. It will only be necessary to direct attention to certain sections of the statute which, considered in connection with the constitutional provisions, *supra*, will determine the extent of the jurisdiction conferred upon the county court.

Section 6547, Rev. Laws 1910, is as follows:

"Guardians of infants and insane persons are hereby empowered to lease and grant mineral oil and mineral gas, in consideration of a royalty or part or portion of the production thereof, and under the same procedure in the county court, as now provided by law, where such consideration is money."

Section 6569 provides:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's [property] in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances [may] require."

And by section 3330 it is provided:

"In all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward."

Section 6547 confers authority upon the guardians of infants to lease and grant mineral oil and mineral gas in consideration of a royalty under the procedure now

provided in the county court for leasing of said lands where the consideration therefor is money. The procedure referred to is that prescribed by section 6569, *supra,* which requires the guardian to make application to the county court, after notice in accordance with the directions of the judge, whereupon the court is authorized to make such orders and give such directions as are needful and as the circumstances may require. *Duff et al. v. Keaton,* 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472. There is no limit in this section as to the terms of the lease, nor any limitation as to the time for which same may run; it being left to the judgment of the court, in the exercise of a sound discretion, to determine what is best for the interest of the minor under the circumstances.

The provisions of Mansfield's Digest of the Laws of Arkansas hereinafter set out, which were extended over and put in force in the Indian Territory by the act of Congress approved May 2, 1890 (c. 182, 26 Stat. 81), were very similar to the provisions of our statute now under consideration. Section 3509, Mansfield's Digest, provided that, when it should be made to appear that it was for the benefit of the ward that his real estate or any part thereof be sold or leased, his guardian or curator might sell or lease the same upon obtaining an order for such sale or lease from the probate court of the county in which such real estate or the greater portion thereof was situated; sections 3510 and 3511 prescribed the procedure to be followed by the guardian in the premises; and section 3511 further provided that the court, after full examination upon the oath of credible and disinterested persons, might, if it was for the benefit

of the ward, authorize a sale or lease of the real estate under such regulations and conditions as the court should consider suited to the case. The authority conferred by this provision is similar to the authority granted by the sections of our statute now under consideration, and is no broader, if indeed as broad, as the authority granted by our statute. These sections of Mansfield's Digest, as later carried into Kirby's Digest, were reviewed by the Supreme Court of Arkansas in *Beauchamp v. Bertig*, 90 Ark. 351, 119 S. W. 75, 23 L. R. A. (N. S.) 659, where the court held that such statutes granted authority to the probate court to authorize a guardian to lease the lands of his ward for a term of years to extend beyond the minority of the ward. The court in that case stated the rule with reference to the powers of a guardian in socage at common law to lease the lands of his ward, and observed that, under the common law or statutes simply declaratory thereof, leases made by the guardian to extend beyond the term of the guardianship are voidable, and cited many authorities in support of this statement. In determining the effect of these statutes the court said:

"But the supreme lawmaking power in our state has by the above statutes invested the probate court with power to sell and lease the lands of infants. The matter is left in the judgment of the probate court, and there are no limitations prescribed for the term of lease, and we are of the opinion, from the above and cognate provisions of chapter 76, Kirby's Digest, that none were intended. The best interest of the estate of the minor is the prime and only consideration, and that seems to be the only limit to his discretion within the statutory provisions. Complying with these, the intent of the lawmakers was to give the probate courts plenary power in the premises. Hence the lease made by order of the court was valid,

although it was to continue beyond the minority of the infants."

Such was the law in the Indian Territory, and leases executed by guardians extending beyond the minority of their wards were approved by the United States Courts in the Indian Territory, and their authority so to do was sustained by this court in *Huston v. Cobleigh*, 29 Okla. 793, 119 Pac. 416, where, after setting out the sections of the statute hereinbefore quoted, the court held:

"That, while at common law all leases by a guardian to extend beyond the term of the guardianship were voidable, a lease of a minor's land pursuant to an order of the probate court was valid, though it extended beyond the minority, following *Beauchamp v. Bertig* [90 Ark. 351], 119 S. W. 75 [23 L. R. A. (N. S.) 659]."

See, also, *Cowles v. Lee*, 35 Okla. 159, 128 Pac. 688.

Plaintiff is a citizen of the Cherokee Tribe of Indians, and the lands involved were her allotment as a member of said tribe, and the lease and order of extension involved were made during her minority. Jurisdiction to lease the allotments of minors and incompetents was conferred upon the United States Court in the Indian Territory and upon the courts of this state by section 20 of the act of April 26, 1906 (c. 1876, 34 Stat. 145), and section 2 of the act of May 27, 1908 (c. 199, 35 Stat. 312). The Department of the Interior has recognized the right of a guardian, when authorized by proper order of the county court, to execute an oil and gas lease upon the lands of his ward for a term of years extending beyond the minority of the ward. Rule 11 of Regulations, Rev. and App., May 18, 1912.

The jurisdiction granted to the county court being "to transact all business appertaining to the estates of

minors," and in cases where a guardian has been appoint-
ed "the court making the appointment has exclusive juris-
diction to control him in the management and disposition
of the person and property of his ward," this grant would
be broad enough to authorize any act to be done or step
to be taken that under the circumstances of the case, in
the judgment of the court, would be for the best interests
of the minor, including authority to authorize the making
of a lease for oil and gas mining purposes by the guar-
dian for the lands of his ward for a term extending be-
yond the minority of the ward.  If it were not so, condi-
tions might, and probably would, arise where the interests
of the ward would be greatly jeopardized, and the value
of his estate caused to suffer serious depreciation and loss
for lack of that authority.  Owing to the well-known
nature of oil and gas and the method of its production,
it is frequently necessary in order to protect the interests
of an owner that lands be promptly leased, and early ex-
ploration and development had to prevent serious loss to
the estate by drainage of the oil and gas therefrom
through adjacent properties.  Where new territory is be-
ing developed, it is sometimes the case that at the begin-
ning of the excitement attendant upon such discoveries
larger sums are paid as a bonus for a lease than could
be procured later, and the premises are leased upon better
terms, if executed promptly, than could be had in the
light of subsequent developments.  In such an instance,
if a minor be the owner of desirable property within prob-
able or proven territory, and be within a few months or
a year or so of his majority, the authority to execute a
lease for a sufficient term of years to guarantee the lessee
a reasonable return upon his investment would enable the
guardian to secure a larger bonus and better terms than

could otherwise be procured. It requires time to explore and develop lands for oil and gas mining operations, and often an outlay of large sums of money in the way of drilling and other preparations for handling the product of the wells, and, if the lessee be confronted with the possibility of losing all his efforts and outlay at a time when the lease is just becoming productive and profitable, it is easy to see that the most advantageous terms cannot be had, and in some instances it is possible that lands could not be leased until the ward attained his majority, during which time the premises could be drained by operations upon adjacent property, and the value of the ward's estate be materially lessened. By leasing the premises and procuring the development of same the ward is deprived of nothing, but, on the contrary, his estate is enhanced in value, and his revenues increased, and upon becoming of age the authority of the guardian is terminated, and the minor comes into possession of an estate that is developed and producing an income which might not have been his under different circumstances.

In *Mallan v. Ruth Oil Co., supra,* the United States District Court said, with reference to the jurisdiction of the county court:

"In the exercise of its exclusive jurisdiction to transact all business appertaining to the estates of minors, the court must, I think, be held to have all the powers relating to the conduct of minors' estates which formerly belonged to courts of equity."

And it cited in support of this statement the case of *Gassenheimer v. Gassenheimer,* 108 Ala. 651, 18 South. 520; Suits in Chancery, sec. 790.

Being vested with jurisdiction "to transact all business appertaining to the estates of minors," and being

given the exclusive control of guardians in the management and disposition of the estates of their wards where a guardian has been appointed, it is a reasonable interpretation of these provisions to say that there is included therein that jurisdiction formerly possessed by courts of chancery.

In *Huston v. Cobleigh, supra,* there was involved an oil and gas mining lease executed by a guardian in the Indian Territory for a term of years beyond the minority of his ward, which had been approved by the United States Court in the Indian Territory, and in upholding the validity of the lease this court said:

"The lease was approved by the Secretary of the Interior, and also by the United States Court, exercising chancery jurisdiction, and also by the same court, exercising probate jurisdiction. It seems to be settled that such court, exercising the powers of chancery, had authority to approve a lease extending beyond the minority of the ward. *Ricardi v. Gaboury,* 115 Tenn. 484, 89 S. W. 89; *Marsh v. Reed,* 184 Ill. 263, 56 N. E. 406; *Branton v. Branton,* 23 Ark. 569; *Haag v. Sparks,* 27 Ark. 594; *Hankins v. Layne,* 48 Ark. 545 [3 S. W. 821]; *Turner v. Rogers,* 49 Ark. 51 [4 S. W. 193]."

In *Cowles v. Lee,* 35 Okla. 159, 128 Pac. 688, it was said in subdivision "a" of the fourth paragraph of the syllabus that:

"The United States Courts in the Indian Territory, sitting as courts of chancery, had authority to approve such leases extending beyond the minority of the ward."

In the case of *Cecil v. Salisbury,* 2 Vernon, 224, 23 Eng. Reprint, 745, the English High Court of Chancery in 1691 declared:

"This court hath often decreed building leases for sixty years of infants' estates where for their benefit."

The decisions of the Supreme Court of Alabama are to the effect that the courts of equity in that state are vested with power to decree a sale of the lands of an infant. *Ex parte Jewett,* 16 Ala. 409; *Goodman v. Winter,* 64 Ala. 410, 38 Am. Rep. 13; *Gassenheimer v. Gassenheimer,* 108 Ala. 651, 18 South. 521.

In *Goodman v. Winter, supra,* the power of the court was declared to rest upon its duty to protect infants and to take care of and preserve their estates while under disability debarring them from administration of their own property; and in *Gassenheimer v. Gassenheimer, supra,* the court said:

"The reason underlying the doctrine is that, as the infant labors under disability—is incapable of managing and disposing of property—the court owes to him the duty of protection, and of controlling and administering his property so as to promote his  *  *  *  interests; a similar reason  *  *  *  which prevails when the court decrees a sale for his maintenance and education."

In *Ricardi v. Gaboury,* 115 Tenn. 484, 89 S. W. 98, the court approved a lease extending for a period of 99 years, which had been made under an order of the chancery court; and likewise in *Marsh v. Reed,* 184 Ill. 263, 56 N. E. 306, the Supreme Court of Illinois held that a lease for 99 years was valid, though the will of the testator contained a provision that the land should not be leased for a longer term than ten years. The leases in *Huston v. Cobleigh* and in *Cowles v. Lee* were each for a period of years extending beyond the minority of the ward. The powers of a court of equity are stated thus in 2 Story, Equity Jurisprudence (13th Ed.) sec. 1341:

"The jurisdiction of the court of chancery extends to the care of the person of the infant so far as is necessary for his protection and education, and to the care of the property of the infant for its due management and preservation and proper application for his maintenance."

The rule is stated in 3 Pomeroy, Equity Jurisprudence, sec. 1308, to be that:

"An infant having been made a ward of the court and a guardian being appointed, the further jurisdiction concerning the ward is ordinarily exercised by supervising, directing, and controlling the acts of the guardian in the management of his trust."

In Gibson's Suits in Chancery, sec. 970, the doctrine is thus announced:

"Whenever it is necessary for the welfare of an infant, idiot, or lunatic to convert his realty into personalty or his personalty into realty, or to invest his money or to ratify or avoid his contracts, the chancery court has authority to order it to be done and to superintend the execution of its order. In short, the chancery courts, acting 'in loco parentis,' and as general guardian for minors, idiots, and lunatics, and persons of unsound mind, will do for them and their property what they themselves would in all probability have done if possessed of good reason and good conscience."

In the briefs of counsel the following quotation is given as having been taken from the annotations to *Richards v. Railway Co.*, 6 Am. & Eng. Decisions in Equity, 554:

"Courts of equity have plenary inherent jurisdiction over the business and estates of infants for their protection and preservation which extends to the care of their person so far as is necessary to their protection and education, and to the care of their property, real and per-

sonal, for its due management and preservation and its proper application to their maintenance; and consequently they will cause to be done whatever may be necessary to preserve their estate and protect their interests, their jurisdiction in the United States being limited to the judicial powers of the Chancellor in England, and not including his prerogative powers as the minister of the crown."

Similar provisions conferring jurisdiction upon county and probate courts of other states with reference to the affairs of minors and decedents have been held to confer upon such courts full and complete jurisdiction as to matters thus confided, and to embrace within the grant authority to afford such relief as was formerly administered by courts of equity in like matters. *Fitzpatrick v. Simonson,* 86 Minn. 140, 90 N. E. 378; *Bennett v. Bennett,* 65 Neb. 432, 91 N. W. 410, 96 N. W. 994; *Williams v. Miles,* 63 Neb. 859, 89 N. W. 452; *Church v. Holcomb,* 45 Mich. 29, 7 N. W. 167; *People v. Wayne Circuit Court,* 11 Mich. 393; *Powell v. Burrus,* 35 Miss. 605; *Toland v. Earl,* 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100; *Hill Investment Co. v. Honeywell,* 65 Kan. 349, 69 Pac. 334; 1 Pomeroy, Eq. Jur. sec. 77; 10 R. C. L. tit. "Equity," sec. 108, p. 258. See, also, *Scott v. McGirth,* 41 Okla. 520, 139 Pac. 519.

In *Duff v. Keaton,* 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, it was held that a lease granting oil and gas mining privileges for a term of years was not a sale of realty, as contemplated by section 5314, Comp. Laws 1909, but, on the contrary, was a chattel real and was personal property. Under its equity powers the court of chancery was vested with power to order the ward's realty changed into personalty when it was for the best interests of the ward. 2 Story, Eq. Jur. (13th Ed.)

sec. 1357; 3 Pomeroy, Eq. Jur. sec. 1309; Gibson's Suits in Chancery, sec. 970.

It thus appears that county courts of the state, in the exercise of their probate jurisdiction as conferred upon them by the constitutional and statutory provisions under consideration, have the authority in a proper case, when the circumstances may require for the best interests of a minor, to authorize a guardian to execute an oil and gas mining lease upon the lands of said minor for a term of years extending beyond the minority of the ward.

It is said in the briefs that the circumstances under which this order of extension was made were inequitable and should not be upheld. The power to execute a lease under the circumstances would include the power to extend the terms thereof upon a sufficient consideration. An additional bonus of $400 in cash was paid, being $5 per acre, and the royalty payable under the terms of the lease was increased from 10 per cent. to 12½ per cent. The court below found there was no fraud upon the part of the guardian, and defendant in error has prosecuted no cross-appeal. Whether the court abused its discretion in authorizing the guardian to execute said contract of extension is not before us, if it could be presented in a proceeding of this kind.

By what we have said we do not mean to say that a court of equity may not in a proper proceeding, upon sufficient showing, grant relief against a lease executed under authority of the county court.

The judgment is reversed, and the cause remanded.

All the Justices concur, except TURNER, J., dissenting.