## HOPE v. HADDOCK et al.

No. 18267. Opinion Filed Jan. 19, 1928.

Rehearing Denied Nov. 13, 1928.

Disney, Wheeler & Alcorn and W. J. Owens, for plaintiff in error.

Humphrey & Campbell, for defendants in error.

BENNETT, C. This was a civil action brought in district court of Creek county, Okla., by Francis Hope, plaintiff in error, against Helen S. Haddock, Fred T. Haddock, Marie H. Dierks, Margaret Starr Galer, and Thomas L. Boone, defendants. The parties will be referred to as they appeared in trial court.

Plaintiff's petition was, in substance, as follows: That she is a Creek freedman enrolled as such opposite Creek freedman roll No. 58; that there was allotted to her as her proportionate share of the lands of the Creek Nation lots 3 and 4 in northwest quarter, and south half of northwest quarter of section 2, township 15 north, range 10 east, and containing 162.92 acres, more or less; that at the time of said allotment, plaintiff was a minor, and that Thomas L. Boone was appointed her guardian by county court of McIntosh county Okla., and continued to act as such until her majority; that during her minority her said guardian applied for and secured permission from county court of said county to sell an undivided one-half interest in and to her said allotted lands, and that thereafter her guardian sold such interest to Fred T. Haddock, one of defendants, and that Helen S. Haddock, Marie H. Dierks, and Margaret Starr Galer appear now to be record owners of undivided inter-

ests in said allotment and assert title adverse to the right and title of plaintiff, and that such claims constitute clouds upon plaintiff's title.

Plaintiff's sole claim in this suit is that the guardianship sale of the undivided interest by the county court was and is void for that said county court was without jurisdiction to make an order of sale of an undivided interest in plaintiff's allotment; that said sale was prejudicial to her interests because the defendants have become tenants in common with plaintiff.

Plaintiff further alleges that the consideration paid to plaintiff for such interest has long since been spent, and that she is unable to restore same to purchaser. She demands that she be decreed to be the owner in fee simple of all said land, and that the said sale of one-half interest be set aside.

Thomas L. Boone filed a disclaimer. The other defendants filed answer consisting of a general denial, except that they admit that Fred T. Haddock purchased a one-half interest in the lands described in the petition, and admit that defendants Helen S. Haddock, Marie H. Dierks, and Margaret Starr Galer are record owners of undivided interests in and to said lands. The answer asks that title of defendants be quieted. The cause was tried to the court without a jury. The following is the substance of the testimony:

Plaintiff, as a witness for herself, testified: That she attained her majority March 16, 1923; that Thomas L. Boone was appointed her guardian by the county court of McIntosh county, the county of her residence; that she first learned of the sale of an interest in her land after she became of age, and that she had no funds with which to reimburse purchaser; that she was unable to pay the taxes on the land and later sold an undivided one-half interest to a Mr. Hays.

Fred T. Haddock, as a witness for plaintiff, testified that he purchased the property at probate sale in October, 1919, for $14,750; that subsequent thereto an oil well was completed on the land from which he recovered approximately $5,000 out of the proceeds, and that he sold interests in the land to his wife and the other defendants.

There was offered in evidence certified copies of the following papers: An order of county court of McIntosh county appointing Thomas L. Boone guardian of plaintiff, letters of guardianship, oath of guardian, petition of guardian, Thomas L. Boone, to sell an undivided one-half interest in plaintiff's allotment, decree of sale, return of sale of real estate, order confirming sale of real estate. These papers are attached together and offered by plaintiff as exhibit A. The petition for sale of real estate, as shown by said copies, was filed August 22, 1919, and is, omitting formal parts, in substance, as follows: That Boone is the acting guardian of Francis Hope, a minor, and that the guardian and his said ward are residents of McIntosh county, Okla., with their postoffice address at Stidham in said county and state; that his said ward had but little personal property; that she is a minor duly enrolled citizen of the Creek Nation opposite roll No. M-58 of the freedman roll of said nation, and that she was allotted and received as her proportionate share of the lands of said nation the real estate above described situated in Creek county, which is of the reasonable value of $800; that all of said land is wild, rough, rocky, raw and uncultivated, and produces but very little income for the support, maintenance, and education of said minor; that it is necessary for the best interests of said minor and of her estate that a portion of the above lands be sold and the proceeds used for support, maintenance, and education of the minor, and the balance, if any there be, be invested under the supervision of the court; that the annual expense chargeable against the ward's estate for support, maintenance, and education is about $400; that said minor's father is dead and her mother is poor and unable to properly support and educate her without assistance from said estate, and that it is therefore necessary for such purpose to make the sale of the interest in such land. The next of kin and persons interested in the personal estate of said minor are set out. Wherefore, it is prayed that an order issue for the sale of such interest at public or private sale as shall be adjudged most beneficial by the court. The petition is duly verified. On the same date the county court entered its decree of sale of said real estate reciting that the guardian had appeared in person and by his attorney, and that the mother and next of kin appeared in open court and consented to the sale. The proof further showed that the guardian filed his return of sale on September 20, 1919, reciting a sale of an undivided one-half interest in said land to Fred T. Haddock for $5,150, and praying a hearing upon the motion to confirm. Thereafter, on the 6th day of October, 1919, other bids were offered, and the final and successful bid of Fred T. Haddock for said property was $14,750; whereupon, the court decreed him to be the highest and

best · bidder and directed the issuance of guardian's deed.

The plaintiff, upon cross-examination, testified that she had contracted to sell to Mr. Hays the undivided one-half interest in this land if she should succeed in this litigation for $800. Fred T. Haddock, on cross-examination, testified: He sold all of his interest to Mrs. Haddock and the other defendants, and that there has been no income from the property since 1922. Upon the close of the evidence the court rendered judgment for defendants, and plaintiff thereupon appeals to this court for review.

The motion for new trial sets out four grounds: (1) That the judgment of the court is not sustained by sufficient evidence, and is contrary to law; (2) that the decision of the court is contrary to the evidence; (3) errors of law occurring at the trial, excepted to by plaintiff; (4) that the court erred in rendering judgment in favor of defendants and against plaintiff, and in refusing to render judgment in favor of plaintiff.

The brief of plaintiff is confined to a single proposition, to wit, that the county court of McIntosh county was wholly without jurisdiction or authority to authorize the guardian of plaintiff to sell and convey an undivided one-half interest in her Creek allotment, and in the body of the brief the plaintiff's attorneys say:

"If a county court has jurisdiction or authority to authorize a guardian of a Creek freedman to divest her of an undivided one-half interest in her allotment, the judgment of the lower court should be sustained."

Plaintiff's attorneys frankly admit in the brief that they have been unable to find a case similar to the one here presented, but they contend that it was never contemplated, either by Congress, when it conferred jurisdiction upon county courts of Oklahoma to supervise estates of minor Indians and freedmen, or by statutes of Oklahoma, that a guardian should be allowed or the county court be given jurisdiction to sanction such a sale as the one complained of.

Section 12, art. 7, of the Constitution of Oklahoma, provides, among other things:

"The county court, co-extensive with the county, shall have original jurisdiction in all probate matters. * * *"

Section 13 of the same article, among other things, provides:

"The county court shall have the general jurisdiction of a probate court. It. shall probate wills, appoint guardians of minors; * * * grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof."

It thus appears that our fundamental law has vested in our county courts comprehensive probate jurisdiction. In the case of Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 Pac. 570, the court, referring to article 7, sec. 13, of the Constitution of Oklahoma, and quoting from the decision in the case of Mallen v. Ruth Oil Co., 230 Fed. 497, says:

"The effect of the foregoing constitutional provision, so far as it relates to the question now being considered, is to clothe the county court with full, complete, and exclusive jurisdiction and authority to transact all business appertaining to the estates of minors, including the sale, settlement, partition, and distribution of the same. The jurisdiction is full and complete so far as relates to matters appertaining to business of the estates of minors, because it applies to all business of that character."

The court in the opinion says also:

"The jurisdiction granted to the county court being 'to transact all business appertaining to the estates of minors,' and in cases where a guardian has been appointed 'the court making the appointment has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward,' this grant would be broad enough to authorize any act to be done or step to be taken that under the circumstances of the case, in the judgment of the court, would be for the best interests of the minor. * * *"

Section 1455, C. O. S. 1921, is as follows:

"Management of Estate of Ward. Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any: and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

Section 1457, Id., is as follows:

"The guardian may join in and assent to a partition of the real estate of the ward with the written approval of the county judge, whenever such assent may be given by any person."

Section 1466, Id., is as follows:

"When the income of an èstate under guardianship is not sufficient to maintain the ward and his family, or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose, upon obtaining an order therefor."

Section 1467 is as follows:

"Sale of Property for Investment. When it appears to the satisfaction of the court upon the petition of the guardian, that for the benefit of his ward his real or personal estate, **or some part thereof, should be sold and the proceeds thereof put out at interest, or invested in some productive stock, or in the improvement or security of any other real estate of the ward, his guardian may sell the same for such purpose, upon obtaining an order therefor."**

Section 1468:

"If the property is sold for the purposes mentioned in the two preceding sections, the guardian must apply the proceeds of the sale to such purposes, as far as necessary, and put out the residue, if any, on interest, or invest it in the best manner in his power, until the capital is wanted for the maintenance of the ward and his family, or the education of his children, or for the education of the ward when a minor, in which case the capital may be used for that purpose, as far as may be necessary, in like manner as if it had been personal estate of the ward."

Section 1470 provides for what shall be contained in the petition for the order of sale, and section 1471 provides:

"Hearing and Order. If it appear to the court or judge, from the petition, that it is necessary or would be beneficial to the ward that the real or personal estate, or some part of it, should be sold, or that the real and personal estate should be sold. * * * If it appear that it is necessary or would be beneficial to the ward to sell the personal estate or some part of it, the court must order the sale to be made."

Section 1476, entitled "Order of Sale," reads as follows:

"If, after a full examination, it appears necessary, or for the benefit of the ward, that his real estate, or some part thereof, should be sold, the court may grant an order therefor, specifying therein the causes or reasons why the sale is necessary or beneficial, and may, if the same has been prayed for in the petition, order such sale to be made either at public or private sale."

In the case of Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, the court, in the opinion, in discussing the power of the probate court to authorize an oil and gas lease for term of years, Judge Williams said:

"The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas."

But the court, referring to sections 12 and 13 of article 7 of the Constitution, and section 5478, Comp. Laws 1909, providing that "every guardian appointed shall have the custody and care of the education of the minor; and the care and management of his estate, until such minor arrives at the age of majority, or marries, or until the guardian is legally discharged," continues:

"In the following section the guardian is required, before his appointment becomes effective, to give bond to the minor conditioned that he will faithfully execute the duties of his trust according to law; it being specially provided that the following conditions shall constitute a part of every such bond without being expressed therein: * * * Second. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody and education of the ward."

The court quotes in its entirety section 5491, Comp. Laws 1909, and also section 5513, Comp. Laws 1909, as follows:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; **and the probate court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."**

Under this reasoning and authority an oil and gas lease for period of years was upheld.

In the case of Cabin Valley Mining Co. v. Hall, supra, it was held that under the Constitution and laws of this state, the

county court may authorize a guardian of a minor to execute an oil and gas mining lease upon the lands of his ward for a period of years extending beyond the ward's minority. The statutory and constitutional provisions are referred to by Judge Hardy in the opinion in this case last named, and he also quotes from the case of Mallen v. Ruth Oil Co., 230 Fed. 497, in part as follows:

"The jurisdiction is full and complete so far as relates to matters appertaining to business of the estates of minors, because it applies to all business of that character. It must be exclusive, because it is not to be presumed, in the absence of clear provisions to the contrary, that the framers of the Constitution intended there should be any division of authority between the county courts and any other courts of the state relating to this important matter, in view of the embarrassment and confusion which such divided authority would lead to. The jurisdiction is neither in plain terms nor by implication lodged in any other court."

In the opinion the court refers to section 6569, Rev. Laws 1910, which, at the end, contains the sentence:

"And the county court may make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances * * * require."

The court continues:

"There is no limit in this section as to the terms of the lease, nor any limitation as to the time for which same may run; it being left to the judgment of the court, in the exercise of sound discretion, to determine what is best for the interest of the minor under the circumstances."

The court refers also to those sections of Mansfield's Digest, later carried into Kirby's Digest, as being reviewed by the Supreme Court of Arkansas in Beauchamp v. Bertig, 90 Ark. 351, 119 S. W. 75, where the court held that such statutes granted authority to probate courts to authorize a guardian to lease the lands of his ward for term of years to extend beyond the minority of the ward. The court in that case stated the rule with reference to the powers of a guardian in socage at common law to lease the lands of his ward, and observed that, under the common law or statutes simply declaratory thereof, leases made by the guardian to extend beyond the term of the guardianship are voidable, and cited many authorities in support of this statement. In determining the effect of these statutes the court, in the Beauchamp Case, said:

"But the supreme lawmaking power in our state has by the above statutes invested the probate court with power to sell and lease the lands of infants. The matter is left in the judgment of the probate court, and there are no limitations prescribed for the term of the lease, and we are of the opinion, from the above and cognate provisions of chapter 76, Kirby's Digest, that none were intended. The best interest of the estate of the minor is the prime and only consideration, and that seems to be the only limit to his discretion within the statutory provisions. Complying with these, the intention of the lawmakers was to give the probate courts plenary power in the premises. Hence the lease made by order of the court was valid, although it was to continue beyond the minority of the infants."

Quoting further from Judge Hardy's opinion:

"Such was the law in the Indian Territory, and leases executed by guardians extending beyond the minority of their wards were approved by the United States Courts in the Indian Territory, and their authority so to do was sustained by this court in Huston v. Cobleigh, 29 Okla. 793, 119 Pac. 416, where, after setting out the sections of the statute hereinbefore quoted, the court held: 'That, while at common law all leases by a guardian to extend beyond the term of the guardianship were voidable, a lease of a minor's land pursuant to an order of the probate court was valid, though it extended beyond the minority, following Beauchamp v. Bertig (90 Ark. 351) 119 S. W. 75 (23 L. R. A. (N. S.) 659).'

"In Mallin v. Ruth Oil Co., supra, the United States District Court said, with reference to the jurisdiction of the county court: 'In the exercise of its exclusive jurisdiction to transact all business appertaining to the estates of minors, the court must, I think, be held to have all the powers relating to the conduct of minors' estates which formerly belonged to courts of equity.'"

To the same effect, Gassenheimer v. Gassenheimer, 108 Ala. 651, 18 So. 520, in which last case the court said:

"The reason underlying the doctrine is that, as the infant labors under disability —is incapable of managing and disposing of property—the court owes to him the duty of protection, and of controlling and administering his property so as to promote his * * * interests; a similar reason * * * which prevails when the court decrees a sale for his maintenance and education."

In the case of Ricardi v. Gaboury, 115 Tenn. 484, 89 S. W. 98, the court approved a lease extending for a period of 99 years, which had been made under an order of the

chancery court; and in Marsh v. Reed, 184 Ill. 263, 56 N. E. 306, the Supreme Court of Illinois held that a lease for 99 years was valid, though the will of the testator contained a provision that the land should not be leased for a longer term than ten years.

The rule is stated in 3 Pomeroy, Equity Jurisprudence, sec. 1308, as follows:

"An infant having been made a ward of the court and a guardian being appointed, the further jurisdiction concerning the ward is ordinarily exercised by supervising, directing and controlling the acts of the guardian in the management of his trust."

In Gibbon's Suits in Chancery, sec. 970, the doctrine is thus announced:

"Whenever it is necessary for the welfare of an infant, idiot, or lunatic to convert his realty into personalty or his personalty into realty, or to invest his money or to ratify or avoid his contracts, the chancery court has authority to order it to be done and to superintend the execution of its order. In short, the chancery courts, acting 'in loco parentis,' and as general guardian for minors, idiots, and lunatics, and persons of unsound mind, will do for them and their property what they themselves would in all probability have done if possessed of good reason and good conscience."

In the case of Welch v. Focht, 67 Okla. 275, 171 Pac. 730, the first paragraph of the syllabus is as follows:

"The county courts of this state are courts of record and have original general jurisdiction in probate matters. The orders and judgments of such courts, when acting within their jurisdiction, are entitled to the same favorable presumptions and the same immunity from collateral attack as are accorded those of other courts of general jurisdiction."

In this case it is declared "jurisdiction" is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them.

In the discussion, quoting from the case of Bryan v. Bauder, 23 Kan. 95, it is said:

"In the course of its proceedings, it became the duty of that court to decide whether the petition was sufficient for a sale of the premises. The court held it sufficient. As the petition presented a case for judicial determination, if the determination was erroneous, it was reviewable in the appellate court, but not a void or worthless determination."

The case of Welch v. Focht, supra, was quite similar to the one at bar, and it was held that the plaintiff's attack was a collateral attack; citing Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184; Continental Gin Co. v. DeBord, 34 Okla. 66, 123 Pac. 159; Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220; Moffer v. Jones, 67 Okla. 171, 169 Pac. 652.

The presumption is in the case at bar that the judgment of not only the county court but the trial court is correct, and there has been presented to us no authority which in anywise denies the correctness of the ruling of these courts. On account of the importance of the question, we have given it considerable study, but it is the rule of this court that "a plausible, but not convincing, argument in the brief, unsupported by citation of authority, is not sufficient to overcome the presumption indulged by the Supreme Court in favor of the correctness of the judgment of the trial court." Chestnut & Smith v. Lynch, 84 Okla. 199, 202 Pac. 1018; Mires v. Hogan, 97 Okla. 130, 222 Pac. 985.

In the case of Webb v. Webb's Guardian, in the Court of Appeals of Kentucky, 1917, 198 S. W. 736, the court dealt with the sale of certain mineral rights and certain timber rights on a tract of land of several hundred acres, and the court said at page 738:

"It is insisted that a judgment which orders the sale of **anything less than the entire interest, which an infant may own in a tract of land, or in such part of the tract as may be adjudged to be sold, is void,** upon the ground that the court has no authority to order such a sale, and for that reason the judgment which directed a sale of the various minerals and rights connected with them in the 377.40-acre tract of land, leaving to the infants the surface of the land, was void. This argument is urged upon the provisions of section 489, supra, which authorizes a court of equity to adjudge a sale of a vested estate of an infant in real property for the education and maintenance of the infant, it being urged that that statute does not authorize the court to adjudge the sale of such interests. It is true that courts of equity in this state have no inherent power to adjudge the sale of lands of infants, but the power to do so is purely statutory, and the authority given by such statutes cannot be exceeded." Citing many cases.

Quoting further, the court says:

"Section 489, subsection 3, of the Civil Code, authorizes a court of equity to order a sale of the vested estate of an infant in real property for his maintenance and education. Under this statute, and for the

purpose there stated, the court cannot order any other kind of an estate of an infant in real property to be sold, except an estate which is vested in the infant at the time of the judgment, but it does not require that the whole vested estate in the property be sold. A sale should not be adjudged of any interest in the vested estate of an infant in real property, unless it is to the best interest of the infant that the sale should be made. The estate which the infants in this action owned in the minerals, as well as the rights in the surface of the lands which were sold, was a vested estate, and the interests which were left to them and not sold were also a vested estate. That one person may own the minerals which are under the surface, and another one own the surface of the land, or that one may own the surface and another the standing timber trees upon the land, is too well recognized and conceded to require the citation of authorities to sustain it. If one owns the surface and another the minerals in the land, each of them is the owner of real property and may have vested estates in them. Each of these estates is the subject of sale and conveyance."

The court, quoting from the case of Hays v. Wicker, 161 Ky. 706, 171 S. W. 447, says:

" 'We do not see that a substantial difference can be made between selling coal under the land without selling the surface, and selling the timber on the land without selling the surface. The chancellor should sell only so much of the ward's estate as his interest requires to be sold, and if he may sell half of the land, we do not see why he may not sell a severable estate in the land, retaining the surface so as to give him a home. * * * We therefore conclude that the judgment complained of is not void for want of authority in the court to order the sale.' "

The court further holds, in substance, that where the court has jurisdiction of the parties and the subject-matter of the action, and adjudges a sale by a commissioner, which is fairly made, the sale is reported and confirmed, the purchaser of the property cannot be divested of it because the judgment under which the sale was made was erroneous and was thereafter reversed upon appeal.

It must be borne in mind that there is no wrongdoing or imposition alleged or sought to be established, nor is the regularity of the proceedings assailed, in the case at bar, except with respect to the power of the probate court to make the order of sale of an undivided interest in real estate.

For the reasons given, the judgment of the trial court is affirmed.

DIFFENDAFFER, JEFFREY, HALL, and HERR, Commissioners, concur.

By the Court: It is so ordered.