Ricardi v. Gaboury.

RICARDI *et al. v.* GABOURY *et al.*

(*Knoxville.* September Term, 1905.)

1. **SALE OF INFANT'S PROPERTY.** Jurisdiction of chancery court over.

Jurisdiction is conferred by statute upon the chancery court to make sales of the property of persons under the disability of coverture and infancy; but the chancery court has inherent jurisdiction, independent of the statute, to sell the real estate of an infant, where it is manifestly for his interest that a sale be made.

Code cited: sec. 5072 (S.); sec. 4054 (M. & V.); sec. 3323 (1858).

Cases cited and approved: Brown's Case, 8 Humph., 200; Martin v. Keeton, 10 Humph., 536; Thompson v. Mebane, 4 Heisk., 370; Simpson v. Alexander, 6 Cold., 619; Porter v. Porter, 1 Baxt., 299; Hurt v. Long, 90 Tenn., 445; Ridley v. Halliday, 106 Tenn., 619; Lenow v. Arrington, 111 Tenn., 720.

Case cited and overruled: Rogers v. Clark, 5 Sneed, 665.

2. **LEASE OF INFANT'S PROPERTY.** Same.

The chancery court also has inherent jurisdiction to decree the execution of a lease of the real estate of infants, for a term extending beyond their minority, where such lease is manifestly for their interest.

Cases cited and approved: Talbot v. Provine, 7 Baxt., 502; Marsh v. Reed, 184 Ill., 263; Hedges v. Riker, 5 Johns. Ch., 163; Mills v. Dennis, 3 Johns. Ch., 370; Cecil v. Earl of Salisbury, 2 Vern., 224.

Ricardi v. Gaboury.

FROM KNOX.

Appeal from Chancery Court, Knox County.—JOSEPH W. SNEED, Chancellor.

JOHN W. GREEN, for Ricardi *et al.*

R. A. BROWN, guardian *ad litem*, for Gaboury et al.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The complainant Mary J. Ricardi is the owner of an undivided one-half, and her co-complainant Nellie R. Gaboury of an undivided one-eighth, interest, while the defendants, who are minors and grandchildren, as well as wards, of Mary J. Ricardi, are the owners of the remaining three-eighths interest, in a certain lot fronting twenty-five feet on the west side of Gay street, and running back between parallel lines 102 feet to an alley, situate in the city of Knoxville. On this lot there stands a business house now occupied under a five-year lease. The annual rental of this property is $1,350, from which after deducting the amounts expended for repairs, insurance, and taxes, a net sum of about $900 remains, which is divided between the parties in the proportions indicated above. The complainant G. H. Miller controls or owns a lot adjoining the one in question, and has re-

cently made a proposition to his co-complainants to take a lease on the latter for the term of ninety-nine years. In consideration of such a lease, Miller agrees to pay an annual rental of $1,500 from the date of the ratification by the court of the lease, and in addition, at his own expense, to take care of all taxes, insurance, and repairs upon the property. He further agrees that the lease so entered upon shall provide that at the end of every twenty years, beginning with such ratification, the net annual rental of the property shall be adjusted by arbitrators, one of whom is to be selected by the owners of the property and the other by the lessee, and upon their failure to agree that the two arbitrators may select a third, who shall fix the annual rental to be paid by the lessee during the next succeeding term of twenty years, but in no event shall the net rental during the existence of the lease ever be less than $1,500 per annum. He also agrees that the rent secured shall be paid in equal monthly installments, and that the failure to pay these installments, or any one of them, when due, or to pay taxes as they accrue, and keep up insurance on the property, and make repairs, shall work, at the option of the owners of the property, a forfeiture of the lease. It is further agreed by him that the lease to be executed shall contain these and other additional stipulations, to wit: That the lessee shall comply at all times with all city laws and ordinances, and that the premises shall not at any time be used in such a manner as to create a nuisance or to violate any law, either State or municipal; that the lessee

shall take good care of the property, and return the same in good condition at the expiration of the lease, and that all buildings or other improvements on the premises at that time shall become the property of the owners of the ground; that the improvements now standing on this lot are worth $10,000, and that the improvements which are to be left upon it at the termination of the lease shall not be of less value.

The purpose of the complainant Miller in obtaining this lease, as disclosed by the record, is to erect upon this and the adjoining property a large and handsome building, of improved architecture, to meet the business needs of a growing city. The complainants Ricardi and Gaboury, believing the contemplated lease to be an advantageous one for all parties interested, filed the present bill asking that the chancery court pass a decree authorizing it to be made so far as the minors are concerned. Their co-complainant, Miller, joins in the bill to indicate his good faith in the matter, and to submit himself, as well as the proposed contract, to the jurisdiction of the court.

As has been stated, the complainant Mrs. Ricardi is not only the guardian, but the grandmother, of the minor defendants, and she alleges in the bill that in agreeing to make this lease she has consulted alone the interest of these grandchildren; that she is an old woman, and intends that her one-half interest in the property shall pass to these defendants under her will, so that they, during the remainder of her life, will be in part of the

beneficiaries of this new lease, and at her death will be the owners of a seven-eighths interest in the property. The clerk and master of the chancery court of Knoxville, to whom the case was referred, in order, among other things, that he might take proof and report as to the advisability of this lease so far as the interest of the minors was concerned, in his response to the order used the following language:

"It is clearly established that it is to the interest and advantage of the minors that said lease be made, ratified, and approved by the court. The proposed arrangement is particularly a desirable one, in view of the fact that four of the owners are females and that they will thereby get a safe, certain, and absolutely secure investment of their means, bringing a stated income upon which they can rely, not subject to fluctuations or depression in prices which hard times may bring about, and which cannot well be taken away from them by improvident marriages in case they marry spendthrift husbands."

The chancellor confirmed this report, and authorized the execution of the lease embracing these terms. From this decree the minor defendants, through their guardian *ad litem,* appealed to this court. The case was then referred to the court of chancery appeals for adjudication, and, that court having reversed the chancellor's decree, it is once more before us upon an appeal prosecuted by the complainants from this decree of reversal.

We think it clear that it is manifestly to the advan-

tage of the minor defendants that the proposed lease should be made. Without the expenditure of a dollar from their estate, improvements will be made which will at once increase the net rental from about $900 to a fixed net annual rental of $1,500. The objection suggested by the court of chancery appeals, that the record shows that property in the city of Knoxville is increasing in value, because of a rapidly growing population and greater business needs, which will naturally enhance rental income from this property, we think satisfactorily met by the fact that upon this record this increase of rental income could only be secured by an improvement of the property made either by the parties themselves, or by a lessee taking it upon terms like those now offered by the complainant Miller. The further objection which is rested upon the length of the lease proposed, is also obviated by the provision that the rent may be readjusted at the end of each period of twenty years, and that at no time shall the net income fall below $1,-500 per annum.

As to the power of the court of chancery to authorize this lease we entertain no doubt. Section 5072 of Shannon's Code provides that for and on behalf of persons laboring under the disability of coverture and infancy a court of chancery may consent to and decree a sale of the property, real or personal, of such persons. While we have this Code provision, yet it is well settled in this State that the chancery court has of itself jurisdiction to sell the real estate of a minor, where it is manifestly

for his interest that a sale be made. This jurisdiction is independent of the statute and inheres in the texture and character of the court. *Brown's Case,* 8 Humph., 200; *Martin* v. *Keeton,* 10 Humph., 536; *Thompson* v. *Mebane,* 4 Heisk., 370, *Simpson* v. *Alexander,* 6 Cold., 619; *Porter* v. *Porter,* 1 Baxt., 299; *Hurt* v. *Long,* 90 Tenn., 445, 16 S. W., 968; *Ridley* v. *Halliday,* 106 Tenn., 619, 61 S. W., 1025, 53 L. R. A., 477, 82 Am. St. Rep., 902; *Lenow* v. *Arrington,* 111 Tenn., 720, 69 S. W., 314. It is true that in *Rogers* v. *Clark,* 5 Sneed, 665, a contrary view was expressed. But that case is out of harmony with cases which preceded, as well as those which have succeeded it, and while so far as we have discovered, it has not been expressly overruled, yet, in view of the repeated announcements of the rule stated above, it cannot now be regarded as authority on this question.

The theory upon which the court exercises its jurisdiction in all such cases is that the infant's real estate shall be so controlled by its decrees as to secure his best interest. In *Lenow* v. *Arrington,* supra, this court affirmed a decree of the chancellor authorizing a sale of unimproved property in which minors had an interest, and at the same time approved the acts of a testamentary trustee, who, without express authority given in the will, had made mortgages upon real estate in which these minors were interested, the proceeds of which were used in its improvement with the view of enlarging the rental income. We think it equally within the power of the chancery court to authorize the making of a lease of

the property of a minor as will be most beneficial to him. In *Talbot* v. *Provine,* 7 Baxt., 502, the court said:

"We are of opinion that, during the minority of infants, the chancery court has jurisdiction to authorize or confirm leasehold contracts for the protection and preservation and for the enhancement of the real estate of such infants, when it is made manifestly to appear that contracts for either of these purposes is for the interest of the minors. Whether such contracts could be authorized or confirmed producing incumbrances on the estate of minors after their maturity we are not now called upon to decide."

The question thus reserved, because not necessary for determination in that case, has been answered by other courts of very high authority. In *Hedges* v. *Riker,* 5 Johns. Ch., 163, there was a devise to executors, in trust for C. for life, and, if she died without issue, then in remainder over, with power to the executors "to sell and dispose of so much of the real estate as should be necessary to fulfill the will," and it was held by Chancellor Kent that this power was sufficient (the persons in remainder being infants) to authorize the executors to execute leases for years of the real estate for such terms and upon such conditions as were reasonable and necessary to carry into effect the intention of the testator expressed in the will. Not content, however, to rest the case alone upon an implication from the power given in the will, it was held that the court, having jurisdiction over the property of infants, could authorize the execu-

tors to make such leases, with consent of the tenant for life, for the term of twenty-one years, or building leases, as they should deem most beneficial to the interest of the tenant for life and those entitled to the reversion or remainder in fee. In the course of the chancellor's opinion it is said: "A lease for years is still a disposition of the estate within the terms of the power, and without resorting to the power, the general jurisdiction of the court over the property of infants is adequate to confer the authority. The court stands, as Lord Nottingham observed, *in loco parentis,* and it is understood to be clearly settled (*Mills* v. *Dennis,* 3 Johns. Ch., 370) that the court may change the estate of infants from real into personal, and from personal into real, whenever it deems such a proceeding most beneficial to the infant. It was declared by the lords commissioners in *Cecil* v. *Earl of Salisbury,* 2 Vern., 224, that the court had often decreed building leases for sixty years of infant's estates, when for their benefit." In *Marsh* v. *Reed,* 184 Ill., 263, 56 N. E., 306, it was held that a court of equity had jurisdiction of a bill to authorize a trustee under a will to execute a lease or real estate for a period of ninety-nine years, when it appeared that all the adult beneficiaries were desirous that the lease be made, and it was to the manifest advantage of all parties, both adult and minors, that this be done, although the testator had by a clause in his will limited the power of the testamentary trustee in the making of the lease to a much shorter term.

Ricardi v. Gaboury.

Without the support of authority, it would seem that, granting the jurisdiction of an equity court to dispose of fee in a minor's real estate when it clearly appeared this was manifestly in his interest, the disposition of a lesser estate upon the same ground might equally be sanctioned by the court. It is to be observed that the making of a lease such as the one desired by the complainants in this cause does not deprive the parties of any interest in the property to be leased. Its effect is simply to prevent the lessors from entering upon the property and taking actual possession thereof as long as the terms of the lease are observed by the lessee. The title to the property, and the right of alienation subject to the lease, remain as if no lease had been executed.

The decree of the court of chancery appeals is therefore reversed, and the cause is remanded to the chancery court of Knox county, in order that that court may supervise and direct the execution of a lease by and with the complainant G. H. Miller of this property.